UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNABELLE HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:15-cv-1322 DB<br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] For the reasons explained below, plaintiff's motion is granted in part and denied in part, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

PROCEDURAL BACKGROUND

In August of 2008, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on January 1, 2007. (Transcript

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 7 & 10.)

1

("Tr.") at 139, 242-49.) Plaintiff's applications were denied initially, (id. at 161-65), and upon reconsideration. (Id. at 170-74.) Plaintiff then appeared for a hearing before an Administrative Law Judge ("ALJ"), and on November 19, 2010, the ALJ issued a decision finding that plaintiff was not disabled. (Id. at 139-48.) However, on March 6, 2012, the Appeals Council vacated the ALJ's decision and remanded the matter for further proceedings. (Id. at 154-57.)

On July 6, 2012, plaintiff again appeared before an ALJ. (Id. at 86-130.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 86-87.) In a decision issued on September 18, 2012, the ALJ found that plaintiff was not disabled. (Id. at 35.) The ALJ entered the following findings:

> 1. The claimant has not engaged in substantial gainful activity since March 31, 2003, the alleged onset date (20 CFR 404.1516 and 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: degenerative joint disease of the lumbar spine, asthma, and depressive, panic, and posttraumatic stress disorders, alcohol abuse, and borderline intellectual functioning (20 CFR 404.1520 and 416.920).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567 and 416.967 except she should avoid concentrated exposure to fumes, odors, dusts, and environments with poor ventilation. She can understand, remember and carry out simple job tasks, she can maintain concentration, persistence and pace for simple job tasks and can interact appropriately with supervisors and coworkers but only occasionally interact with the public.
>
> 5. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 6. The claimant was born on July 30, 1956 and was 47 years old at onset. The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).
>
> 7. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

////

>8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1559 and 416.969).
>
>10. The claimant has not been under a disability, as defined in the Social Security Act, since March 31, 2003, her alleged date disability (sic) (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 23-34.)

On April 23, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's September 18, 2012 decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on June 19, 2015.[2] (ECF No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d

---

[2] On December 5, 2016, plaintiff advised the court that on November 1, 2016, an ALJ found plaintiff to have been disabled since May 31, 2014. (ECF No. 27.) On December 13, 2016, defendant filed a motion to strike plaintiff's filing. (ECF No. 28.) Plaintiff filed an opposition on December 27, 2016. (ECF No. 29.) Plaintiff's filing was not considered by the court in resolving the parties' motions.

1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In her pending motion plaintiff asserts the following two principal claims[3]: (1) the ALJ's treatment of the medical opinion evidence constituted error; and (2) the ALJ's treatment of the plaintiff and lay witness testimony constituted error. (Pl.'s MSJ (ECF No. 19) at 19-27.[4])

////

---

[3] Although plaintiff's motion for summary judgment purports to assert three separate claims of error, two of those claims concern the ALJ's treatment of medical opinion evidence. Accordingly, those allegations will be addressed as a single claim.

[4] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

I.  **Medical Opinion Evidence**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or non-examining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

**A. Dr. Dale Van Kirk**

Here, plaintiff first argues that the ALJ erred by rejecting the June 1, 2011 opinion of Dr. Dale Van Kirk, an examining physician. (Pl.'s MSJ (ECF No. 19) at 19-20.) The ALJ's decision discussed Dr. Van Kirk's opinion, which found that plaintiff could perform light work, and compared it to a 2008 opinion by another examining physician, which found that plaintiff could perform medium work. (Tr. at 32.) The ALJ concluded that "[g]iven the absence of any serious clinical findings in both of these evaluations, and the lack of any objective evidence," the 2008 opinion "most accurately depicts the claimant's functional limitations." (Id.)

"The ALJ need not accept an opinion of a physician—even a treating physician—if it is conclusionary and brief and is unsupported by clinical findings." Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); see also Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986) (ALJ need not accept a treating physician's opinion which is "brief and conclusory in form with little in the way of clinical findings to support [its] conclusion."). Here, a review of Dr. Van Kirk's examination reveals that it lacks the support of clinical findings. For example, Dr. Van Kirk's examination found that plaintiff sat comfortably, got up and out of a chair, walked around the examination room, and got on and off the table without difficulty. (Tr. at 796.) Plaintiff was able "to squat down and take a few steps . . . without difficulty" and was able to "get up on her toes and heels." (Id. at 797.) Her strength and tone were "[n]ormal at 5/5 in the upper extremities and lower extremities bilaterally." (Id. at 798.) In this regard, the court finds that the ALJ offered a specific and legitimate reason supported by substantial evidence in the record for rejecting Dr. Van Kirk's opinion.

**B.  Dr. Montez McCarthy**

Plaintiff next challenges the ALJ's treatment of the November 3, 2008 examining opinion offered by Dr. Montez McCarthy. (Pl.'s MSJ (ECF No. 19) at 20-25.) The ALJ's decision discussed Dr. McCarthy's opinion and afforded it "some, but certainly not significant weight." (Tr. at 26.) In this regard, the ALJ noted that Dr. McCarthy "noted on multiple occasions that the claimant's effort was questionable and responded to questions in a 'less than honest' manner." (Id.) That Dr. McCarthy indicated that plaintiff's reported symptoms "appeared to be exaggerated and inconsistent with her demonstrated abilities." (Id.) And that, despite suggesting that plaintiff may be moderately limited in some respects, Dr. McCarthy assigned plaintiff a GAF of 65.[5]  (Id.

Inconsistency is a specific and legitimate reason for rejecting a medical opinion. See Gabor v. Barnhart, 221 Fed. Appx. 548, 550 (9th Cir. 2007) ("The ALJ noted internal inconsistencies in Dr. Moran's report, which provide a further basis for excluding that medical

---

[5] "A GAF of 65 indicates mild symptoms." Isaacson v. Astrue, No. EDCV 08-1437 AGR, 2009 WL 3233539, at *4 (C.D. Cal. Oct. 2, 2009) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000)).

opinion."). Moreover, the ALJ's finding with respect to Dr. McCarthy's opinion is supported by substantial evidence in the record. In this regard, Dr. McCarthy's opinion states:

> The claimant appeared to respond to questions in a less than honest manner. She did not appear to be a reliable and credible historian. Her overall presentation was not congruent with her report on many levels. She appeared to be in a relatively good mood despite her report, until she felts she had not "passed some sort of test." She reported that she did not understand what was going on in school passed the fourth grade and claimed to have little memory of her own work history, yet she was able to obtain a GED being basically illiterate and able to maintain employment at AM PM for several months. She reported that she ultimately lost the job because she couldn't do math but the cash registers do that for you and it would not seem that it would take them that long to fire her on that basis. Her basic fund of knowledge and performed mathematical calculations did not seem to support her suggestions of extreme poor cognitive functioning. She reported having bipolar disorder but did not describe symptoms consistent with such a disorder.

(Id. at 479.) Accordingly, the court finds that the ALJ offered a specific and legitimate reason supported by substantial evidence in the record for rejecting Dr. McCarthy's opinion.

**C.  Dr. Alan Brooker**

Finally, plaintiff challenges the ALJ's treatment of the opinion of examining physician Dr. Alan Brooker. (Pl.'s MSJ (ECF No. 19) at 21-25.) In this regard, Dr. Brooker examined plaintiff on July 13, 2010, and July 19, 2010, and provided a lengthy medical opinion and "MEDICAL ASSESSMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES MENTAL" form. (Tr. at 606-40.) The ALJ, however, afforded Dr. Brooker's opinion, "little weight." (Id. at 27.)

In support of that determination the ALJ stated that, although Dr. Brooker found that plaintiff had little to no ability to perform and carry out simple instructions, plaintiff "independently performs all her activities of daily living and personal care, takes public transportation, manages her own money, shops and uses a computer." (Id.) However, even assuming plaintiff can perform these tasks does not conflict with Dr. Brooker's opinion that plaintiff cannot perform simple tasks in a work environment.

////

////

As explained by the Seventh Circuit:

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).

The ALJ also stated that, although Dr. Brooker found that plaintiff had "little or no ability to deal with others, the claimant lives with a friend, socializes, and has interacted in an appropriate manner with numerous physicians and psychologists without difficulty." (Tr. at 27-28.) The ALJ also noted that "[t]reating records" reflected that plaintiff was "conversant, coherent, and pleasant." (Id. at 28.) However, that plaintiff lives with a friend and has interacted appropriately with her caregivers does not conflict with Dr. Brooker's opinion that plaintiff has little or no ability to deal with others in a work setting. Moreover, the ALJ cites to no evidence to support the conclusion that plaintiff socializes.

The ALJ went on to state that Dr. Brooker's opinion that plaintiff was unable "to maintain personal appearance" was not supported by any collaborating evidence" and was inconsistent with plaintiff's medical records." (Id.) The court agrees and finds that the ALJ provided a specific and legitimate reason for rejecting this limitation assessed by Dr. Brooker but not for discrediting Dr. Brooker's entire opinion.

The ALJ also rejected Dr. Brooker's opinion by stating:

> . . . this extreme opinion contrasts sharply with the other evidence of record, including the opinions of examining psychologists or psychiatrists, and is without substantial support from the other evidence of record, which obviously renders it less persuasive.

(Tr. at 28.) However,

> [t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

8

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). In this regard, an ALJ errs by assigning a medical opinion "little weight while doing nothing more than . . . criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014).

The ALJ also rejected Dr. Brooker's opinion after finding that it "apparently relied quite heavily" on plaintiff's subjective reports, and "appears to have . . . accepted as true, most, if not all, of what the claimant reported." (Tr. at 28.) Moreover, the ALJ noted that plaintiff "misrepresented her alcohol use" to Dr. Brooker. (Id.) Dr. Brooker's opinion, however, is a lengthy and thorough recounting of his evaluation of plaintiff's subjective reports, review of plaintiff's medical records, and the results of obtained from considerable psychological testing.

"[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1199-200 (9th Cir. 2008); see also Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1300 (9th Cir. 1999) ("More importantly, Dr. Manfield interviewed Regennitter twice, confirmed his complaints with his mother, and conducted extensive objective psychological testing. Dr. Manfield explained in detail how the results of each test supported his diagnoses. Dr. Manfield did not simply 'take Regennitter's statements at face value.'").

The final reason offered by the ALJ for rejecting Dr. Brooker's opinion was that plaintiff "underwent the . . . examination . . . not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal." (Tr. at 28.) However, the opinion of every examining physician is obtained not for treatment but for evidence. Moreover, the opinion of an examining physician is either obtained by referral from plaintiff's counsel or from the Commissioner. That the referral was the result of a referral from plaintiff's counsel cannot be a specific and legitimate reason for rejecting the opinion. See generally Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.").

Accordingly, plaintiff is entitled to summary judgment on her claim that the ALJ's treatment of the medical opinion offered by Dr. Alan Brooker constituted error. Plaintiff's claim, however, is denied as to the medical opinions of Dr. Dale Van Kirk and Dr. Montez McCarthy.

## II.     Plaintiff and Lay Witness Testimony

Plaintiff argues that the ALJ's treatment of plaintiff's testimony and the testimony offered by lay witnesses constituted error. (Pl.'s MSJ (ECF No. 19) at 26-27.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

**A.  The Plaintiff's Testimony**

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms was not credible to the extent they were inconsistent with the ALJ's residual functional capacity determination.  (Tr. at 30.)  In this regard, the ALJ found, in part, that although plaintiff alleged that she had been disabled since 2003, plaintiff had "not participated in ongoing, regular treatment for her complaints," and the treatment she did receive was "extremely sporadic, routine and conservative in nature."  (Id.) "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007).

The ALJ also discounted plaintiff's testimony due to the "paucity of objective evidence that supports her allegation" and the "lack of any objective evidence" supporting plaintiff's allegations of serious mental limitations.  (Tr. at 30, 31.)  "[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the impairment.  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).  Nonetheless, lack of medical evidence is a relevant factor for the ALJ to consider in his credibility analysis.  (Id. at 681.)

A third reason offered by the ALJ for discounting plaintiff's testimony was plaintiff's "continued abuse of alcohol, and failure to take her medication as prescribed . . . ."  (Tr. at 31.)  "[I]n assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" Molina, 674 F.3d at 1113 (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)).

In this regard, the court finds that the ALJ offered specific, clear and convincing reasons for rejecting plaintiff's testimony.

### B. Lay Witness Testimony

Plaintiff also challenges the ALJ's treatment of the lay witness testimony offered by plaintiff's friend and plaintiff's daughter. (Pl.'s MSJ (ECF No. 19) at 26. The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect her activities must be considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288. Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).

If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919. The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289. Nor does the fact that medical records do not corroborate the testimony provide a proper basis for rejecting such testimony. Smolen, 80 F.3d at 1289. It is especially important for the ALJ to consider lay witness testimony from third parties where a claimant alleges symptoms not supported by medical evidence in the file and the third parties have knowledge of the claimant's daily activities. 20 C.F.R. § 404.1513(e)(2); SSR 88-13.

Here, the ALJ rejected the lay witness testimony for two reasons. First, the ALJ found that the plaintiff's "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." (Tr. at 32.) However, as noted above, the fact the medical records do not corroborate the lay witness testimony does not provide a proper basis for rejecting such testimony. Smolen, 80 F.3d at 1289.

The second reason offered by the ALJ for rejecting the lay witness testimony was that "it is difficult to attribute [the alleged] degree of limitation to the claimant's medical condition as opposed to other reasons, in view of the weak medical evidence and the other factors discussed," elsewhere in the ALJ's decision. (Tr. at 32.) The ALJ, however, did not provide an explanation

or citation from which the court can determine what "other factors," the ALJ is referencing.

In this regard, it is not clear that the ALJ provided a germane reason for rejecting the lay witness testimony. Nonetheless, the court has already found that the ALJ provided clear and convincing reasons for rejecting plaintiff's testimony, which was similar to the testimony of the lay witnesses. "[W]here the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similar testimony, we cannot reverse the agency merely because the ALJ did not 'clearly link his determination to those reasons.'" Molina, 674 F.3d at 1121 (9th Cir. 2012) (quoting Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001)).

Accordingly, the court finds that plaintiff is not entitled to summarize judgment with respect to her claim that the ALJ's treatment of plaintiff's testimony and the testimony offered by lay witnesses constituted error.

## CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin.., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand

the case to the agency.").

Here, the court cannot find that further administrative proceedings would serve no useful purpose. This matter will, therefore, be remanded for further proceedings.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is granted as to plaintiff's claim that the ALJ's treatment of the medical opinion offered by Dr. Alan Brooker constituted error and is denied as to plaintiff's claims that the ALJ's treatment of the opinions of Dr. Dale Van Kirk and Dr. Montez McCarthy, and the lay witness testimony offered by plaintiff and a lay witness, constituted error;

2. Defendant's cross-motion for summary judgment (ECF No. 25) is granted in part and denied in part as indicated above;

3. The Commissioner's decision is reversed; and

4. This matter is remanded for further proceedings consistent with this order.

Dated: January 9, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\hernandez1322.ord